# JS-6

# O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KENNETH RILEY,<br><br>Plaintiff,<br><br>v.<br><br>BROTHERHOOD OF RAILWAY<br>CARMEN DIVISION,<br>TRANSPORTATION<br>COMMUNICATIONS<br>INTERNATIONAL UNION/IAM<br><br>Defendant. | ) Case No.<br>)  EDCV 13-1131 JGB (DTBx)<br>)<br>)<br>) GRANTING DEFENDANT'S<br>) MOTION FOR SUMMARY<br>) JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

    Before the Court is the Motion for Summary Judgment
(Doc. No. 23) filed by Defendant the Brotherhood of
Railway Carmen Division of the Transportation-
Communications International Union/IAM.  ("Defendant"
or "Union.")  After considering the papers timely filed
and the arguments presented at the September 29, 2014
hearing, the Court GRANTS Defendant's Motion.

# I.   BACKGROUND

Plaintiff Kenneth Riley ("Plaintiff") filed a Complaint against Defendant on June 24, 2013.  (Compl., Doc. No. 1.)  The Complaint asserts a single claim against the Union for breach of the duty of fair representation.  (Compl. ¶¶ 28-35.)  Defendant answered on September 13, 2013.  (Doc. No. 16.)

On August 4, 2014, Defendant filed its Motion for Summary Judgment.  ("Motion," Doc. No. 23.)  In support of the Motion, Defendant attached: a Separate Statement of Uncontroverted Facts and Conclusions of Law ("SUF," Doc. No. 23-3); the Declaration of Sergio Elizarraras ("Elizarraras Decl.," Doc. No. 23-4) attaching eight exhibits; the Declaration of N. Skelly Harper ("Harper Decl.," Doc. No. 23-13); and excerpts from the deposition of Plaintiff ("Plaintiff's Depo.," Doc. No. 23-14) with three exhibits attached.

On August 20, 2014, Plaintiff filed his Opposition to Defendant's Motion.  ("Opp'n," Doc. No. 29.)  Plaintiff also attached the Deposition of Plaintiff along with three exhibits.[1]

---

[1] Plaintiff failed to submit a Statement of Genuine Disputes of Material Fact as required by the Court's Standing Order.  Plaintiff also failed to provide any additional evidence to support his claims.  Plaintiff instead included a table with arbitrary samplings of quotes from Defendant's Motion.  (Opp'n at 9-14.)  Therefore, the Court deems the facts offered by Defendant in its SUF to be undisputed.  See Fed. R. Civ. P. 56(e)(2), L.R. 56-3.

1     Defendant replied on August 25, 2014.  ("Reply,"

2  Doc. No. 31.)  On August 26, 2014, Plaintiff filed a

3  Surreply.  ("Surreply," Doc. No. 32.)[2]

4

5              **II.  LEGAL STANDARD[3]**

6

7     A motion for summary judgment shall be granted when

8  there is no genuine issue as to any material fact and

9  the moving party is entitled to judgment as a matter of

10  law.  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby,</u>

11  <u>Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party

12  must show that "under the governing law, there can be

13  but one reasonable conclusion as to the verdict."

14  <u>Anderson</u>, 477 U.S. at 250.

15     Generally, the burden is on the moving party to

16  demonstrate that it is entitled to summary judgment.

17  <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);

18  <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>,

19  707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party

20

21       [2]  The Court would be within its discretion to strike this document.  <u>See Dichter-Mad Family Partners,</u>

22  <u>LLP v. United States</u>, 707 F. Supp. 2d 1016, 1041 n.15 (C.D. Cal. 2010) aff'd, 709 F.3d 749 (9th Cir. 2013),

23  Hawai'i Disability Rights Center v. Cheung, No. 06-00605 DAE-LEK, 2007 WL 2874842, *1, n.1 (D. Haw. Sept.

24  27, 2007) ("Insofar as Defendants did not obtain leave of court to file the surreply, the Court will not

25  consider it").  While the Court would ordinarily strike such an improper filing, the Court will consider the

26  contents of the Surreply in order to have a complete record.

27      [3] Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case. Id.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." In re Oracle, 627 F.3d at 387 (citing

4

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio</u>
<u>Corp.</u>, 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the
evidence is such that a reasonable jury could return a
verdict for the non-moving party." <u>Anderson</u>, 477 U.S.
at 248.  In ruling on a motion for summary judgment,
the Court construes the evidence in the light most
favorable to the non-moving party.  <u>Barlow v. Ground</u>,
943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv.</u>
<u>Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626,
630-31 (9th Cir. 1987).

**III. DISCUSSION**

**A. Undisputed Facts**

Plaintiff was hired in 2008 by Progress Rail
Services ("Progress Rail.")  (SUF ¶ 1.)  He worked as a
"Carman", a position that entails inspecting and
repairing railcars in accordance with both Federal and
industry guidelines.  (SUF ¶¶ 2-3.)  Plaintiff worked
for Progress Rail from 2008 until his termination in
2012.  (SUF ¶ 4.)

Throughout Plaintiff's employment, he was a member
of the Brotherhood of Railway Carmen Division of the
Transportation Communications Union.  ("Union," SUF ¶
8.)  The Union was the collective-bargaining agent for

Carmen at the Mira Loma facility where Plaintiff was employed.  (SUF ¶¶ 5,8.)

Progress Rail terminated Plaintiff in 2012, as the result of an incident that occurred on July 26 of the same year.  (Elizarraras Decl., Exh. E, ("Violation Letter") Doc. No. 23-9.)  The facts surrounding the incident are disputed by Plaintiff and Progress Rail.  Progress Rail asserts that Bryce Frias, Plaintiff's supervisor, asked him to replace a defective "coupler knuckle" on a train car.  (SUF ¶ 13.)  The coupler knuckle is a part of the device that connects railcars together.  (Opp'n at 10.)  Progress Rail asserts that Plaintiff failed to replace the knuckle – disobeying Mr. Frias's instruction – and failed to inform Mr. Frias that he did not complete the task.  (Violation Letter.)  While it is undisputed that the knuckle was "condemnable", Plaintiff now contends that Mr. Frias gave the instruction to the entire crew, that there was not enough time left in the shift to complete the assigned task, and that he was singled out for discipline inappropriately.  (SUF ¶¶ 60, 64.)

However, on July 27, the day after the incident, Plaintiff wrote an inculpatory statement seeming to acknowledge Mr. Frias's instruction to replace the knuckle and Plaintiff's failure to do so.  (Plaintiff's Depo., Exh. 3, Doc. No. 23-25.)  Plaintiff received a formal notice on August 3, 2012, informing him that he had violated a disciplinary policy.  (Violation

Letter.)  The notice also informed Plaintiff that there would be a hearing on the matter on August 8, 2012. (Id.)  Since Plaintiff was a member of the Union, the collective bargaining agreement controlled the disciplinary process, including the hearing.

The Union provided Plaintiff representation through Sergio Elizarraras, an Assistant National Representative for the Plaintiff's Union unit. (Elizarraras Decl. ¶¶ 7-8.)  Mr. Elizarraras has represented Union members at hundreds of disciplinary proceedings in his twenty years as a Union representative.  (Id. ¶ 9.)  After receiving the case, Mr. Elizarraras interviewed Plaintiff about the incident, both on the phone and in person, and reviewed signed statements from Plaintiff and other Progress Rail employees.  (Id. ¶ 15.)

Prior to the hearing, Mr. Elizarraras reviewed the facts of the case with his superior, National Representative Daryl Burnett.  (Id. ¶ 16.)  Based on the seriousness of the charge, the signed inculpatory statement, and their combined experience, the two concluded a substantive defense would face substantial difficulty.  (Id. ¶ 17.)

Mr. Elizarraras and Mr. Burnett believed the best argument to be a procedural defense, based on a mistake in the formal notice Progress Rail sent to Plaintiff. (Id. ¶¶ 20-21.)  The notice stated the incident had occurred on July 27 instead of July 26.  (Violation

7

Letter.)  The Collective Bargaining Agreement ("CBA") provides that prior to an investigation, the Company is to issue a "precise charge in writing which gives a reasonable opportunity to secure the presence of necessary witnesses." (Elizarraras Decl., Exh. A, Doc. No. 23-5, at 10.)  While procedural arguments are rarely completely successful, Mr. Elizarraras and Mr. Burnett concluded that this was the best option given the facts.  (Elizarraras Decl. ¶ 22.)

Plaintiff and Mr. Elizarraras attended the hearing on August 8, where Mr. Elizarraras strenuously objected to Progress Rail's attempts to introduce evidence in support of Plaintiff's dismissal.  (Elizarraras Decl., Exh. F., ("Hearing Transcript") Doc. No. 23-10, at 14-18.)  He objected to the discussion of the events of July 26, explaining that the notice was dated July 27. (Id. at 9-12, 23-31)  The hearing officer ultimately decided to recess the hearings, apparently based on Mr. Elizarraras's strident objections.  (Id. at 31.)

On August 17, Progress Rail issued a corrected notice that accurately stated the date of the charged misconduct.  (Compl., Exhs. A,B).  The hearing resumed on September 25, 2012, and Mr. Elizarraras again strenuously objected to discussion of the incident and argued that a charge letter cannot be corrected once an investigation has begun.  (Elizarraras Decl. ¶ 26; Hearing Transcript at 52-53.)  He also entered into evidence an arbitration award from another case in

support of his argument.  (Hearing Transcript at 57-59, 98-101.)  Additionally, Mr. Elizarraras argued that the continuance of the hearing voided any possible discipline because more than 30 days had passed since the date of the incident.  (Elizarraras Decl. ¶ 27.) Mr. Elizarraras and the Union, based on the deficiencies of the case and their extensive experience, believed that these arguments provided the best hope for some relief for Mr. Riley.  (Id.)

The hearing officer overruled the Union's objections and proceeded with the presentation of substantive evidence.  (Hearing Transcript 68-70.)  At a recess, Mr. Elizarraras phoned his superior, Mr. Burnett, to inform him of the situation while Plaintiff listened to their speakerphone conversation. (Elizarraras Decl. ¶ 28.)  Mr. Burnett directed the two to leave the hearing in protest if Progress Rail continued the presentation of evidence.  (Id.)  After the recess ended and Progress Rail continued to present evidence, Plaintiff and Mr. Elizarraras walked out in protest.  (Id.)  The hearing continued without the two present.  (Hearing Transcript at 71.)

On October 25, 2012, Progress Rail sent Plaintiff a letter informing him that he was terminated as of that day.  (Elizarraras Decl., Exh. G, Doc. No. 23-11.)  On November 21, 2012, Mr. Burnett informed Plaintiff that the Union would not challenge Plaintiff's termination through the arbitration procedure allowed under the

CBA.  (Elizarraras Decl., Exh. H, ("Burnett Letter")
Doc. No. 23-12.)  Mr. Burnett explained that he had
sought guidance from the Union's Industry Relations
Department, who believed that there would be no chance
of winning in arbitration, as the procedural argument
would likely be unsuccessful before an arbitrator.
(Id.)  Mr. Burnett also explained that Plaintiff's past
disciplinary record would make a successful arbitration
difficult.  (Id.)  Prior to the July 26 incident,
Progress Rail had given Plaintiff three separate
written warnings for various acts of misconduct.
(Elizarraras Decl., Exh. D, Doc. No. 23-8.)  The
included a one day suspension in 2008 for failing to
clock out for a meal break, a seven day suspension in
2009 for an "extensive unauthorized break," and a
warning for leaving during work hours and falsifying
time records.  (Id.)

Mr. Burnett informed Plaintiff he could appeal the
Union's decision not to arbitrate by writing to the
Union President, Richard Johnson. (Burnett Letter.)
Plaintiff appealed, and Mr. Johnson denied Plaintiff's
appeal on December 7, 2012, based on the findings at
the hearing and Plaintiff's past disciplinary record.
(Compl. ¶ 24, Ex. F.)

**B. Judgment as a Matter of Law**

Plaintiff's complaint against the Union is predicated on the "statutory duty of fair representation."  See Vaca v. Sipes, 386 U.S. 171, 177 (1967).  The duty of fair representation is inferred from the union's exclusive authority under the National Labor Relations Act, 29 U.S.C. § 159(a), to represent all employees in a bargaining unit and "to act fairly when dealing with an employer on behalf of a member." Moore v. Local Union 569 of the Int'l Bhd. of Elec. Workers, 989 F.2d 1534, 1541 (9th Cir. 1993).  "The doctrine of fair representation serves both as a limited check on the arbitrary exercise of union power and, through its limitations, allows unions wide latitude in effectively serving the interests of the bargaining unit."  Adkins v. Mireles, 526 F.3d 531, 539 (9th Cir. 2008).

Thus, to establish that a union breached its duty of fair representation, an employee must show that the union's conduct was "arbitrary, discriminatory, or in bad faith."  Vaca v. Sipes, 386 U.S. 171, 190 (1967). Mere negligence on the part of the union does not constitute a breach of the duty of fair representation. See Peters v. Burlington N. R.R., 931 F.2d 534, 539 (9th Cir. 1990).  Because of the broad discretion traditionally owed to unions, Courts do not scrutinize the quality of a union's decision.  See Stevens v.

11

<u>Moore Business Forms, Inc.</u>, 18 F.3d 1443, 1447 (9th Cir. 1994) ("[W]e have held consistently that unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances."); <u>Herring v. Delta Air Lines, Inc.</u>, 894 F.2d 1020, 1023 (9th Cir. 1989) ("[A union] must be able to focus on the needs of its whole membership without undue fear of law suits from individual members.").

Plaintiff's somewhat convoluted Opposition appears to argue that the Union made two arbitrary decisions: (1) to pursue the procedural defense and (2) to not arbitrate the case. (Opp'n at 15-20.) Although the Complaint refers at various points to "discriminatory" Union decisions not made "in good faith", Plaintiff has not presented any evidence to support these allegations and makes no mention of them in the Opposition. (Compl. ¶¶ 34-35.) Therefore, it appears the Plaintiff bases his claim of breach of the duty of fair representation on the "arbitrary" prong.

**1. The Union's Procedural Defense**

A union is not liable for "mere negligence"; rather, "to be arbitrary, the union must have acted in 'reckless disregard' of the union member's rights." <u>Marino v. Writers Guild of America, East, Inc.</u>, 992 F.2d 1480, 1486 (9th Cir. 1993).

Here, the Union has presented evidence that Mr. Elizarraras reviewed Plaintiff's case by speaking with Plaintiff both on the phone and in person before the disciplinary hearing.  (Elizarraras Decl. ¶ 15.)  Mr. Elizarraras also reviewed written statements from Plaintiff as well as other Progress Rail employees. (Id.)  Prior to the hearing, Mr. Elizarraras discussed both the charges and the facts of the case with his superior, Mr. Burnett.  (Id. ¶ 16.)  The two have extensive experience with disciplinary hearings, having handled hundreds before, and believed that any substantive defense would be difficult because of the seriousness of the safety violation and Plaintiff's signed inculpatory statement.  (Id. ¶¶ 17-18.)  The two believed the procedural defense would provide the best likelihood of some relief.  (Id. ¶ 22.)

Plaintiff seems to argue that the Union should have based Plaintiff's defense on a substantive ground; specifically, that Plaintiff's manager gave the instruction to change the coupler knuckle to the entire crew rather than Plaintiff alone.  (Opp'n at 18.) However, Plaintiff has presented no evidence that he pressed this argument to the Union or that it was ignored.  Mr. Elizarraras discussed the case with Plaintiff multiple times and reviewed the facts both by himself and with Mr. Burnett. Additionally, Plaintiff's

13

own signed statement[4] reads that the instruction was given to him alone, and Plaintiff's supervisor also testified to that fact.  (Hearing Transcript at 74, 101.)  Therefore, the Union certainly had reason to pursue the procedural defense instead, even if Plaintiff had suggested the substantive defense, and further scrutiny would be the exact type of judicial second guessing in which federal courts do not engage when reviewing union decisions.  See Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1273 (9th Cir. 1983) ("Because the union must balance many collective and individual interests when it decides whether and to what extent to pursue a particular grievance, courts should accord substantial deference to the union's decisions.").

Plaintiff additionally argues that since the first hearing was recessed and Plaintiff and Mr. Elizarraras left the second hearing in protest, Plaintiff was not allowed to put forward his own or others' testimony and that his substantive argument was not offered by the Union.  (Opposition at 17.)  However, this is merely another manner of seeking to second guess the Union's

---

[4] Plaintiff now appears to dispute that the signed statement ever existed. (Opp'n at 19.)  However, Plaintiff cites to no evidence in support of this claim.  Furthermore, Plaintiff authenticated and read the relevant portions of his written statement at his deposition.  (Plaintiff's Depo., 40:5-42:11)

judgment.[5]  After reviewing the facts and the charge, the Union believed that Plaintiff's signed inculpatory statement and the seriousness of the offense would weaken any substantive argument. (Elizarraras Decl. ¶¶ 17-18.)  The Union chose to pursue a different tack, and it did so vigorously: Mr. Elizarraras vociferously objected to the introduction of any testimony at the hearing, because of the incorrect date on the notice. (Hearing Transcript at 9-14, 17-31.)  At the continued hearing, Mr. Elizarraras continued to press this argument. (Id. at 37, 47-48, 51-53.)  Plaintiff and Mr. Elizarraras left the continued hearing after discussing it with Mr. Elizarraras's superior, Mr. Burnett. (Elizarraras Decl. ¶ 28.)  While this gambit ultimately did not succeed, its lack of success does not make it an "arbitrary" decision.  It was made after deliberation and based on a rational strategy.

Accordingly, the Court finds that by pursuing the procedural defense, the Union did not breach its duty of fair representation. The Union's "deliberation and explanation sufficiently demonstrate that the union did

---

[5] This is further highlighted by Plaintiff's deposition testimony:

Q: Can you name anything that you, looking back, think was a bad decision on [Mr. Elizarraras's] part?

A: The only thing I could look back and see is that his – his argument didn't work. I – I didn't return back to work

(Plaintiff's Depo. 64:5-9.)

not act arbitrarily." <u>Slevira v. Western Sugar Co.</u>,
200 F.3d 1218 (9th Cir. 2000).

**2. The Decision not to Arbitrate**

Plaintiff also argues that the Union's decision not
to progress the case to arbitration was a breach of the
Union's duty of fair representation.  (Opp'n at 15,20.)
Plaintiff contends that the Union should have held an
additional, Union-only hearing to determine the merits
of Plaintiff's case.  (Opp'n at 19,20.)  Plaintiff
states that "Defendant discussed the charges against
Plaintiff without a formal hearing to determine if
those charges were tenable.  Specifically, if Plaintiff
was truly insubordinate to his superior." (<u>Id.</u> at 19.)
However, Plaintiff cites no authority for the
proposition that the Union must itself hold a hearing
to investigate Plaintiff's claims.

The Union representative, Mr. Elizarraras, reviewed
the facts of the case, reviewed the written statements,
and spoke to Plaintiff both on the phone and in person.
(Elizarraras Decl. ¶ 15.)  He also reviewed the case
with his superior, Mr. Burnett.  (<u>Id.</u> ¶ 16.)
Furthermore, after Progress Rail terminated the
Plaintiff, the Union explained its decision not to
arbitrate in the letter from Mr. Burnett.  (Burnett
Letter at 1.)  Mr. Burnett explained that Plaintiff's
past record of written warnings and Plaintiff's written

inculpatory statement would affect any effort to appeal the case to arbitration. (Id.)  Mr. Burnett also explained that even with the wrong date on the notice, a procedural error would be very unlikely to  be successful in arbitration. (Id.)  Furthermore, Mr. Burnett stated that he had reviewed the file as well as spoken with Industry Relations at the Grand Lodge, who also agreed that there would be no chance of winning at arbitration.  (Id.)

Once again, this deliberation and explanation sufficiently demonstrate that the Union's decision not to arbitrate the case was not arbitrary, and therefore the Court finds the Union did not breach its statutory duty of fair representation. See Truesdell v. S. California Permanente Med. Grp., 151 F. Supp. 2d 1161, 1171 (C.D. Cal. 2001) aff'd, 37 F. App'x 945 (9th Cir. 2002) ("The courts afford a wide berth to the exercise of a union's discretionary judgment, both in whether or not to pursue a grievance claim, and in how that claim is then pursued").

**IV. CONCLUSION**

    For the foregoing reasons, the Court GRANTS
Defendant's Motion for Summary Judgment.

Dated: September 29, 2014    _____

                                    Jesus G. Bernal
                          United States District Judge